UNITED STATES of America, Appellee,

v.

Jose O. ORTEGA–SANTANA,
Defendant, Appellant.

No. 87–2053.

United States Court of Appeals,
First Circuit.

Heard Oct. 31, 1988.

Decided March 8, 1989.

---

Luis A. Medina Torres, Hato Rey, P.R., by Appointment of the Court, for appellant.

Warren Vazquez, Asst. U.S. Atty., Criminal Div., with whom Daniel F. Lopez-Romo, U.S. Atty., Hato Rey, P.R., was on brief for appellee.

Before CAMPBELL, Chief Judge, COFFIN and TORRUELLA, Circuit Judges.

TORRUELLA, Circuit Judge.

This is an appeal from a conviction of robbery of mail matter in violation of 18 U.S.C. § 2114 in which appellant claims that the district court erred in failing to suppress his pretrial confession and subsequent identification. The key to answering these questions lies in determining whether appellant was "seized" within the meaning of the Fourth Amendment when asked by government agents to accompany them to their office for investigation.

*Background*

The uncontested evidence presented by the government at trial[1] established that on April 3, 1987 two young men entered the United States Postal Service Contract Station in Amelia Ward, Guaynabo, Puerto Rico, where Angel Torres Hernández (Torres Hernández) was working as a clerk. After a brief conversation, the two individuals proceeded to rob the station of $70 in its custody. The robbers also took Torres Hernández' watch from his person.

As a result of an anonymous tip on April 28, 1987, two postal inspectors went to appellant's home and requested that he accompany them to their office for an investigation. Appellant agreed to do so and was driven there in an official car. Appellant was neither handcuffed or physically restrained, nor was he told that he was under arrest or in custody. The testimony of the government agents was to the effect that appellant was at liberty to leave at any time.

Upon arrival at the inspectors' office he was advised of his constitutional rights in Spanish, appellant's native language, after which he signed a written form stating that he understood his rights. Thereafter, appellant indicated that he was willing to answer questions without assistance of counsel and the inspectors proceeded to interrogate him. Appellant gave an incriminating written statement which was eventually used at trial as evidence against him.[2]

---

1. Appellant presented no evidence to rebut the government's case.

2. Appellant objected to admission of this evidence both at trial and during a hearing on a motion to suppress. The magistrate's recommendation denying suppression was affirmed by the district court. At trial the court conducted a hearing pursuant to 18 U.S.C. § 3501, and

On April 29, 1987, Torres Hernández visited the postal inspectors' office and selected both appellant's and co-defendant's pictures from among numerous photographs contained in two photo albums as being the two robbers in the April 3 incident. The appellant's photographs had been taken by the inspectors after appellant had confessed on April 28. During the trial Torres Hernández again identified appellant as a participant in the robbery and the government introduced as evidence against appellant the pretrial identification and the photo spread.[3]

*Discussion*

█ Appellant's initial argument is to the effect that he was illegally detained when taken to the inspectors' office because the inspectors lacked probable cause to arrest him. Therefore, appellant argues, his subsequent confession is invalid because it is the product of his illegal arrest and must be suppressed as "fruit of the poisonous tree." *See Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). *See also Taylor v. Alabama*, 457 U.S. 687, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982). In the alternative appellant contends that his confession was improperly admitted into evidence because it was involuntary by reason of his being under custodial interrogation without the benefit of advice of his constitutional rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Because of this alleged illegality, or because they are also the product of the allegedly illegal arrest, appellant argues that the photographs taken subsequent to his confession, which were used to identify him in the photospread, are also subject to exclusion under *Wong Sun*. Appellant also seems to argue, although his point is not clearly articulated, that the identification procedures were somehow improperly suggestive.

Appellant's argument rests on the incorrect assumption that he was illegally seized.

A person is "seized" within the meaning of the Fourth Amendment if, "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Michigan v. Chesternut*, —— U.S. ——, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988), *U.S. v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980) (opinion of Stewart, J.). For purposes of the Fourth Amendment, if the person is free to walk away, there has been no intrusion and thus, the person has not been "seized." *See Chesternut, supra.*

On the record in this case, there was no seizure of appellant. The uncontradicted evidence is to the effect that the inspectors' invitation to appellant was unaccompanied by any threat or show of force or other form of physical restraint. The only testimony presented is to the effect that appellant was at liberty to leave the presence of the agents, and to refuse the invitation to accompany them to their office. Moreover, the record reveals that he was told at least twice while at the office that he was free to leave. In juxtaposition we have that appellant was 21 years old, spoke no English, was asked by two law enforcement agents to accompany them to an office for investigation, and was driven there in an official car.[4] We are asked to rule that the above constitutes a *per se* "seizure." This we cannot do because there is no objective basis upon which we can conclude that, as the record stands, a reasonable person would have believed that his freedom was in any manner significantly curtailed. *See Mendenhall, supra* 446 U.S. at 558, 100 S.Ct. at 1879.

We, of course, are not so far removed from the real world as to be unaware of the *potential* for abuse presented by circumstances similar to those described by

upon a determination of voluntariness admitted the confession in evidence, instructing the jury appropriately in regard thereto.

**3.** Also over appellant's objection.

**4.** Although appellant does not speak English, the agent testified that the investigation was

conducted in Spanish, appellant's native language. As to the fact that appellant was driven in an "official car," the agent testified that the car was unmarked and displayed non-government plates.

this record. This is so particularly where, as here, investigators fail to tell the suspect he is free to decline their invitation. But a potential for transgression is not enough to license reversal of appellant's conviction. Although law enforcement agencies risk judicial intervention into otherwise valid convictions by engaging in border-skirting conduct, we cannot, on the basis of mere speculation, extend the law of seizure beyond appropriate constitutional parameters or unnecessarily interfere with what on its face appears to be a legitimate criminal investigation. Furthermore, due deference must be given to the conclusions of the fact finders who had a superior opportunity to view the testimony first-hand, yet found no undue restriction of appellant's liberty during the course of the investigation. *Cf. Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979).

Considering the above, all *Wong Sun* challenges based on an allegedly illegal seizure are rejected.

■ Passing on to the other alternative contentions, the uncontested evidence is to the effect that *Miranda* warnings were given to appellant upon his arrival at the postal inspectors' office, and that it was only after these warnings that the incriminating statement was given. No evidence of involuntariness in the giving of this statement was elicited at either the suppression hearing or at the trial. Thus, we cannot find a violation of appellant's Fifth Amendment rights.

The allegation regarding the derivative illegality of the use of appellant's photograph is equally without substance. The photograph was taken after the confession was legally given. Such a procedure is unquestionably permissible.

The contention of improper suggestiveness in the photospread was rejected after full exploration of the evidence by both the magistrate and district judge. A review of the record reveals that no reversible error was committed in this respect.

The conviction is *affirmed.*